THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

SECUNDO DE LA PAZ,                      )
                                        )
          Plaintiff,                    )
                                        )
vs.                                     )          NO. CIV-07-669-D
                                        )
DBS MANUFACTURING, INC.,                )
                                        )
          Defendant.                    )

## O R D E R

Before the Court is Defendant DBS Manufacturing, Inc.'s  Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 11].   Pursuant to Fed. R. Civ. P. 12(b)(2), Defendant argues the action must be dismissed  because it does not have sufficient contacts with the State of Oklahoma to permit this Court to exercise jurisdiction over Defendant.

Plaintiff, an Oklahoma citizen, brought this action to recover damages for injuries he sustained while operating a portable foam/sprayer cleaning system, which the parties refer to as a "foamer;" he  alleges that the product malfunctioned, causing him serious injuries.   Plaintiff alleges that Defendant, a Georgia corporation, manufactured the allegedly defective product, and  he asserts claims based on products liability and negligence.  As the basis for this Court's exercise of personal jurisdiction over Defendant, he alleges that Defendant is "conducting business in the state of Oklahoma by selling its products in this state."  Complaint ¶6.  He also alleges that the product was "manufactured, marketed, sold and put into the channels of commerce" by Defendant.  Complaint ¶8.  Plaintiff  operated the allegedly defective product while employed by Contract Services Limited

("CSL")[1] in Oklahoma City.

On February 14, 2008 the Court conducted a hearing on Defendant's motion.  Based on the arguments presented at that hearing, the Court authorized the parties to conduct discovery, limited to the issue of personal jurisdiction, and to then file supplemental briefs regarding their respective positions on the issue of personal jurisdiction.  Each party has now filed a supplemental brief, and each has submitted evidentiary materials as exhibits.   In addition,  the parties had submitted affidavits and other evidentiary materials as exhibits to their initial briefs.  As a result, the evidence now before the Court  consists of responses to requests for admissions, material taken from Defendant's web site,  affidavits, and  excerpts from the deposition of Defendant's production manager and network administrator, Dana Kinser.

Having reviewed the parties' briefs and the evidentiary materials, the Court concludes that an evidentiary  hearing is not required because the parties have submitted sufficient evidence on which to base a ruling on the question of personal jurisdiction.  Accordingly, the Court will decide the issue without conducting an evidentiary hearing[2].

 Plaintiff bears the burden of establishing that the Court may properly exercise jurisdiction over the Defendant.  When a motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other evidentiary materials, a plaintiff need only make a *prima facie* showing of personal jurisdiction. *AST Sports Science, Inc. v. CLF Distribution Limited*, 514  F.3d 1054, 1057 (10th Cir.  2008), *citing OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th

---

[1]*Although the Complaint does not mention CSL, Plaintiff states in his Objection to the Motion to Dismiss that he was employed by CSL. Plaintiff's Objection ¶6.*

[2] *A district court has discretion to determine the procedure to employ when considering a motion to dismiss for lack of personal jurisdiction.  Federal Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992), citing Ten Mile Indus. Park v. Western Plains Serv., 810 F.2d 1518, 1524 (10th Cir. 1987).*

2

Cir. 1998).  The same rule applies where, as here, the Court authorizes discovery limited to the issue

of personal jurisdiction, but does not conduct an evidentiary hearing. *Soma Medical International v.*

*Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999).

      Plaintiff's *prima facie* burden is satisfied "by demonstrating, via affidavit or other written

materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings*, 149 F.3d

at 1091. The Court considers and construes as true only " plausible, non-conclusory, and non-

speculative" allegations in the Complaint. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d

1063, 1070 (10th Cir. 2008).    If the parties submit conflicting affidavits, all factual disputes must

be resolved in the plaintiff's favor.  *AST*, 414 F.3d at 1057,  *citing Wenz v. Memery Crystal*, 55 F.3d

1503, 1505 (10th  Cir.1995).

      It is well established that, to be subject to personal jurisdiction,  a nonresident defendant  must

have sufficient contacts with the forum state to satisfy the requirements of due process. *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980);  *Peay v. BellSouth Med. Assistance Plan*,

205 F.3d 1206, 1209 (10th Cir.  2000). "To obtain personal jurisdiction over a nonresident defendant

in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum

state and that the exercise of jurisdiction would not offend due process." *Intercon, Inc. v. Bell Atlantic*

*Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir.2000).  In Oklahoma that test becomes a single

inquiry because Oklahoma's long-arm statute reaches to the full extent of due process. *Rambo v.*

*American Southern Ins. Co.*, 839 F. 2d 1415, 1416 (10th Cir. 1988).

      Jurisdiction over corporations may be specific or general. *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 473 (1985). General jurisdiction exists where a plaintiff's cause of action does not arise

from or relate to the defendant's activities within the forum state, but  the defendant has maintained

"continuous and systematic general business contacts in the state." *OMI*, 149 F.3d at 1091.  Specific jurisdiction exists where a defendant does not have continuous contacts with the state, but the plaintiff shows that 1) the defendant has purposefully directed its activities at residents of the forum state and 2) the plaintiff's alleged injuries "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 473.

I. General personal jurisdiction:

      In this case, the evidence, construed most liberally in Plaintiff's favor, does not establish general personal jurisdiction.   Plaintiff alleges that  Defendant is a Georgia corporation, and does not dispute that Defendant's principal place of business is located in Atlanta, Georgia.   The parties agree that Defendant is not licensed to do business in Oklahoma, does not maintain an Oklahoma office or employees, and does not pay taxes here.   The parties also agree that Defendant's primary business is the design and manufacture of drive units, also referred to as gear boxes[3], for installation in various types of industrial equipment.   Defendant also previously manufactured foamers; for purposes of this motion, it does not dispute that it manufactured the foamer which allegedly injured the Plaintiff.  It is also not disputed that Defendant no longer manufactures foamers, and it has not done so since sometime in 2006.

       Although Defendant has regional representatives for the sale of the drive units/gear boxes, it does not have a regional representative assigned to Oklahoma. Deposition of  Dana Kinser, submitted as Plaintiff's Exhibit A to his supplemental brief ("Kinser dep."),  p. 12, lines 1-25. Defendant's  list of regional representatives includes the names and contact information for its representatives assigned to 21 states within identified geographic regions in the United States;

---

[3]*The materials before the Court use both phrases to describe these items; to avoid confusion, they are referred to hereinafter as "drive units/gear boxes."*

4

Oklahoma is not among the 21 states assigned to Defendant's sales personnel.   *See* Defendant's Ex. 3 to Motion.   Furthermore, the listed representatives are involved only in the sale of drive units/gear boxes, and do not sell foamers.   Kinser dep., p. 20, lines 22-25.   Defendant  did not solicit sales in Oklahoma for any  products it manufactures, and it  did not market any products here. *Id*., p. 12, lines 1-25.    Defendant's  marketing  was  limited  to  its  drive  units/gear  boxes.    It  currently  has  no marketing policies in effect, but participates in one trade show each year; it does not have magazine or other print advertising, and has not done so for over 10 years.   Kinser dep., p. 23, lines 12-19.

Plaintiff offers no evidence to contradict the deposition testimony of Kinser.  He offers no evidence to show that Defendant has a continuous and systematic presence in Oklahoma or that it did so at the time of Plaintiff's injury.   Accordingly, construing the Complaint and the evidence most liberally in Plaintiff's favor,  Defendant has not had  the continuous and systematic general business contacts in Oklahoma required to permit this Court to exercise general personal jurisdiction over the Defendant.

II. Specific personal jurisdiction:

To determine if specific personal jurisdiction may be exercised, the Court must examine the nature and the quality of Defendant's contacts with Oklahoma to determine if they are sufficient to show that Defendant "purposefully availed" itself of the benefits of doing business here:

> [A]n analysis of whether a court's exercise of specific personal jurisdiction comports with the Due Process Clause is a two-step inquiry. *See Benton v. Cameco Corp*., 375 F.3d 1070, 1075 (10th Cir.2004), *cert. denied*, 544 U.S. 974(2005). First, we consider whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.  Second, "if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial

justice." *OMI Holdings*, 149 F.3d at 1091 (*quotations omitted*).

*Pro Axess, Inc. v. Orlux Distribution, Inc*., 428 F.3d 1270, 1276 -1277 (10th Cir. 2005).  "In determining whether a defendant has established sufficient minimum contacts with the forum state, we examine whether the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *Id., quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A defendant's contacts are sufficient if "the defendant purposefully directed its activities at residents of the forum, and ... the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state."  *OMI Holdings*, 149 F.3d at 1091. (quotations, citations, and emphasis omitted).

Solicitation of business in the forum state is "some evidence suggesting purposeful availment." *Soma Medical International v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999), *citing Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1076 (10th Cir. 1995) and *Burger King*, 471 U.S. at 473.  However, solicitation alone is not sufficient because "purposeful availment" requires a showing that the defendant's  contacts demonstrate that it purposefully availed itself of the privilege of conducting business in the forum, thus "invoking the benefits and protections of its laws."  *Fidelity and Cas. Co. of New York v. Philadelphia Resins Corp.*, 766 F.2d 440, 445 (10th Cir. 1985), *citing Hanson v. Deckla*, 357 U.S. 235, 253 (1958).   The "purposeful availment" requirement ensures that a defendant "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant <u>himself</u> that create a 'substantial connection' with the forum State."  *Rambo*, 839 F.2d at 1419 *quoting Burger King,* 471 U.S. at 474-75.  Purposeful availment generally requires "affirmative

6

conduct by the defendant which allows or promotes the transaction of business within the forum state." *Rambo*, 839 F.2d at 1420, *citing Decker Coal Co. v. Commonwealth Edison*, 805 F.2d 834, 840 (9th Cir. 1986). "Generally speaking, specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else." *Bell Helicopter Textron, Inc.*, 385 F.3d 1291, 1296 (10th Cir. 2004), *citing OMI Holdings*, 149 F.3d at 1092.

In this case,  Plaintiff argues that the evidence shows Defendant purposefully availed itself of the benefits of doing business in Oklahoma because: 1)  Defendant maintains a web site which is accessible in Oklahoma and all other states; 2) Defendant placed its products in the stream of commerce and did  not prohibit  purchasers from selling them to end users in Oklahoma; 3) Defendant knew that the foamer at issue in this lawsuit  would ultimately be used in Oklahoma; and 4) Defendant's drive units/gear boxes  have been used in Oklahoma.

Maintenance of the web site:

Although Defendant maintains a web site, that fact alone is insufficient to establish minimum contacts for jurisdictional purposes.  The maintenance of a web site which merely provides information to interested viewers is not sufficient to constitute "purposeful availment."  *Soma*, 196 F. 3d. at 1297.   Kinser testified  that Defendant does not market or  sell products on the Internet; instead, its web site is designed to provide information about its drive units/gear boxes;  the gear boxes are engineered and designed to meet customer specifications.  Kinser dep., p. 24, lines 9-25. The web site is intended to be viewed by engineers or others employed in industries manufacturing industrial equipment of which a drive unit/gear box is a component.  *Id.*   Thus,  the web site is "an information point." *Id.*, lines 23-24. If the viewer of Defendant's web site is  interested in obtaining

more information or in purchasing a  drive unit/gear box, he is directed to the web site listing of

Defendant's  regional sales representatives; the sales representatives cover specific geographical

regions in the United States, and a prospective customer would contact the representative for the

region in which his state is located.  *Id.,* p. 15, lines 24-25; p. 16,  lines 1-6; p. 25, lines 5-8.

Oklahoma is not included in any of the geographical regions shown on the web site or any other

information available to the public.  Kinser dep., p. 12, lines 1-9.  Although  foamers are mentioned

in the web site information, Defendant's  regional sales representatives do not sell or distribute

foamers.  *Id.*, p. 20, lines 3-25.

　　　In his brief in response to Defendant's motion,  Plaintiff argued that the  web site shows that

Defendant's  products are sold throughout the United States and abroad and its equipment has been

installed in more than 40 countries.  Plaintiff submits a page, entitled "Our Worldwide Presence, "

from Defendant's web site. Plaintiff's Ex. A to initial response brief, p. 2.   The web site page

consists of a statement that Defendant "delivers technically advanced solutions to our customers'

needs in every part of the world.  Our equipment has been installed in more than 40 countries...;" the

page  then lists those countries.  *Id.*   The exhibit does not mention foamers and contains no reference

to the United States.

　　　Although Plaintiff submits several exhibits based on Defendant's web site, he does not argue

that Defendant sells its products over the Internet or that the sale or delivery of the foamer at issue

in this case was generated by Defendant's web site.  Nor does Plaintiff allege or argue that  Defendant

conducted business in Oklahoma via the Internet or  that  the distributor who purchased the subject

foamer obtained information from  the web site or was even aware of its existence.  Accordingly, the

Court need not apply the  test for jurisdiction based on Internet contacts or communications with the

forum state announced in *Soma Medical,*  196 F.3d at 1296.

The Court concludes that the evidence before it is insufficient to establish that Defendant engaged in the sale or marketing of its foamers or other products  via its web site. Instead, the web site provides information regarding Defendant's drive units/gear boxes; it also provides regional contacts for those interested in obtaining additional information regarding those products.   As a result, the web site is a "passive" or informational web site which does not establish the contacts required to establish personal jurisdiction.  *See Soma Medical*, 196 F.3d at 1297.  Even if the evidence could be construed as establishing that Defendant's drive units/gear boxes were marketed in part through its web site, there is no evidence that its foamers were advertised or marketed in that manner. In any event,  national advertising which reaches the forum state, without more, is not sufficient to establish the minimum contacts required for personal jurisdiction. *See, e.g., Williams v. Bowman Livestock Equipment Company*, 927 F.2d 1128, 1131 (10th Cir. 1991).

Placement of the products into the stream of commerce without restrictions on subsequent sales to Oklahoma purchasers:

Although Plaintiff initially argued that Defendant markets its foamers to all states, including Oklahoma, the evidence  does not support that argument.   Defendant's web site page  includes foam cleaning systems as one of the items Defendant  manufactures; however, it does not mention Oklahoma or any other state; it contains no reference to the manner in which foamers are sold and does not contradict Defendant's evidence that it sold the foamer at issue to a distributor and not to an end user.   Kinser testified in his deposition that          the foamers were sold primarily to chemical companies or "distribution product companies," and Defendant had "no way of knowing where they're sending this from that point on."  Kinser dep., p. 11, lines 4-9.  He also testified that the distributors to whom the foamers were sold were generally chemical companies, and the foamers

were utilized to dispense the chemicals; sometimes, a chemical company gave a foamer to a third party customer as an incentive to use the chemicals manufactured by that company.  *Id.,* p. 50, lines 20-25; p. 51, lines 1-3.

Plaintiff offers no evidence to dispute Defendant's contention that it did not target any market for the foamers.  In fact, Plaintiff affirmatively states that Defendant sells foamers "to <u>distributors</u> across the country who are providing these foamers to businesses, such as the one the Plaintiff worked for who used them in the food service industry for industrial cleaning."  Plaintiff's Objection to Motion to Dismiss ¶ 2 (emphasis added).

Furthermore, Plaintiff's own evidence establishes that the foamer at issue was sold by Defendant to a distributor, J&R Services, Inc., in Burlington, Iowa.  Affidavit of James R. Pfadenhauer, President of J&R Services, Inc., Plaintiff's Ex. D to Plaintiff's Objection to Motion ("Pfadenhauer Aff.").  According to Mr. Pfadenhauer, J&R Services is a "wholesaler" and has purchased products manufactured by Defendant on several occasions; it purchased the foamer at issue in this action from Defendant.  Pfadenhauer Aff. ¶¶ 1-2.   Mr. Pfadenhauer also states that J&R Services provides products, including the foamer at issue, to CSL.  *Id.* ¶2.   When it purchased the foamer from Defendant, "J&R Services directed [Defendant] to ship the subject foamer directly to Double D Foods in Oklahoma City, Oklahoma."  Pfadenhauer Aff., ¶ 6.  However, Defendant mistakenly shipped the foamer to J&R Services in Iowa and not to Oklahoma; Mr. Pfadenhauer states that this shipment was in error because Defendant "made an entry error on the address and mistakenly sent the foamer to J&R Services without confirming the Order;"  J&R Services immediately forwarded the foamer to the Double D Foods plant in Oklahoma City "without otherwise handling the product."  *Id.,* ¶ 7.

10

According to Plaintiff, this evidence shows that  Defendant directly sold the foamer to Double D Foods[4] in Oklahoma, but  mistakenly shipped the foamer  to the wholesaler  in Iowa.  At a minimum, Plaintiff contends that Defendant's actions show that it was "reasonable and foreseeable" that the Defendant's product would be used in Oklahoma.   Plaintiff's Objection to Motion ¶4.

Defendant argues that Plaintiff's evidence does not support purposeful availment but instead shows that J&R Services, the Iowa wholesale distributor to whom Defendant sold the foamer, initiated the contact with Oklahoma by selling the foamer to Double D Foods.  Defendant contends that, although it knew that Double D Foods was in Oklahoma, it did not initiate the transaction  with that company which resulted in the foamer's ultimate use  in Oklahoma.    Instead, the sale to an ultimate user in Oklahoma was a sale by J& R to CSL for use at Double D Foods.

As Defendant argues, there is no  evidence that Defendant initiated contact with the Oklahoma company to whom the foamer was sold by J&R Services.  In fact, Plaintiff's own evidence establishes that J&R Services "directed" Defendant to ship the foamer at issue to Oklahoma City.   Pfadenhauer Aff. ¶6. Therefore,  J&R Services, and not the Defendant,  initiated the delivery of Defendant's product in Oklahoma.  Plaintiff offers no  evidence to the contrary.

To establish minimum contacts based on purposeful availment, the contacts must "result from actions by the defendant <u>himself</u> that create a 'substantial connection' with the forum State."  *Rambo*, 839 F.2d at 1419 *quoting Burger King,* 471 U.S. at 474-75.  Purposeful availment generally requires "affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state."  *Rambo*, 839 F.2d at 1420.

Plaintiff argues, however, that minimum contacts are sufficiently established where, as here,

---

[4]*Plaintiff does not explain the relationship between Double D Foods and Plaintiff's employer, CSL.*

a product manufacturer places the product in the stream of commerce which ultimately results in the product's use in the forum state.  Plaintiff contends that, because Defendant manufactured a product that was sold nationally to distributors, it was reasonable and foreseeable that the product would be used in Oklahoma.

"In the context of products liability the minimum contacts requirement turns, in some measure, on foreseeability.  The Supreme Court has explained that 'the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State [but] that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'"  *Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1295-96 (10th Cir. 2004), *quoting World-Wide Volkswagen Co.*, 444 U.S. at 297.  "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State."  *Asahi Metal Industry Company, Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) (plurality opinion)(O'Connor, J.).  Plaintiff does not submit authority indicating that the Tenth Circuit has altered the view, expressed in *Bell Helicopter Textron*, that minimum contacts in a products liability action cannot be based only on the likelihood that a product will find its way into a state.

Plaintiff argues, however, that this case differs from *Asahi* because Defendant admits that it did not place any restrictions on the location of the end user to whom those distributors ultimately sold the foamers.  Kinser testified that Defendant did not impose such restrictions on the wholesale distributors.  Kinser dep., p. 19, lines 10-21.  Kinser also testified that Defendant did not "track" the sales of its foamers, and did not exercise control over the location of the end users to whom they were ultimately sold by the distributors.  Kinser dep., p. 31, lines 19-20.

Plaintiff offers no authority, and the Court has located none, to support a contention that purposeful availment can be established by showing that the nonresident defendant did not prohibit a purchaser from later selling its product within the forum state.    In fact, the Tenth Circuit decisions suggest that the absence of such control by the nonresident defendant  would negate a finding of purposeful availment.    In this circuit, specific jurisdiction must be based on the nonresident defendant's actions.  *See, e.g., Bell Helicopter*, 385 F.3d at 1295-96 ;  *Melea, Ltd. v. Jawer* SA, 511 F.3d 1060, 1066 (10th Cir. 2008) ( "[O]nly the defendant's own actions, directed at the forum State, are relevant to the jurisdictional question"); *Rambo*, 839 F.2d at 1419 (Purposeful availment requires contacts which "proximately result from actions by the defendant <u>himself</u> that create a 'substantial connection with the forum State.").   Where a nonresident defendant relinquishes  control over  the ultimate location of a product and allows a third party to exercise that control, the nonresident defendant cannot be said to have  purposefully directed its activities at the forum state in which the product is later found.

<u>Defendant's knowledge that the foamer at issue would be used in Oklahoma</u>

It is undisputed that Defendant  knew the foamer at issue in this case had been sold by J&R Services to CSL in Iowa and that CSL had, in turn, planned to use the foamer for its work at Double D Foods in Oklahoma City.  Defendant admits that it was instructed by J&R Services to ship the foamer directly to Double D Foods and that, through its own error, Defendant mistakenly shipped the foamer to J&R in Iowa.

The evidence before the Court shows that, although Defendant was aware the foamer at issue was to be shipped and used in Oklahoma, Defendant did not initiate or  participate in the decision to locate the foamer in Oklahoma.  Defendant did not have direct contact  with CSL regarding this

13

transaction, and did not have a business relationship with CSL.  Kinser dep., p.30, lines 14-20.

Kinser also testified that, to the extent he could ascertain the ultimate location of any foamer sold by

Defendant, the foamer at issue in this case is the only one which was ultimately sold to an end user

in Oklahoma.  Kinser dep., p. 39, lines 10-14.

Plaintiff contends that Defendant's knowledge that the foamer was to be used in Oklahoma

is sufficient to show purposeful availment.   "But the foreseeability that is critical to due process

analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is

that the defendant's conduct and connection with the forum State are such that he should reasonably

anticipate being haled into court there." *Fidelity and Cas. Co.*, 766 F.2d at 446.  "If a defendant's

product comes into the forum state as a result of a deliberate, although perhaps indirect, effort of the

defendant to serve the forum state's market, then that defendant is subject to jurisdiction there." *Id.*

If, however, the product comes into the forum state as a result of "fortuitous events over which the

defendant has no control, then the defendant is not subject to jurisdiction in the forum state." *Fidelity*

*and Cas. Co.,* 766 F.2d at 446.  A defendant's mere "awareness that the stream of commerce may or

will sweep the product into the forum State does not convert the mere act of placing the product into

the stream into an act purposefully directed toward the forum State[5]." *Four B Corp. v. Ueno Fine*

*Chemicals Industry, Ltd.*  241 F. Supp.2d 1258, 1265 (D.Kan.,2003).

In this case, there is no evidence to support a finding that delivery of the foamer for use in

---

[5]*Other courts have rejected the contention that actual knowledge, without more, is sufficient to establish purposeful availment.  In Rodriguez v. Fullerton Tires Corp., 115 F.3d 81 (1st Cir. 1997),  the First Circuit held that, even if the defendant had "specific knowledge" that the stream of commerce would move its product into the forum, "this awareness alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts."  115 F.3d at 85.   "The test is not knowledge of the ultimate destination of the product, but whether the manufacturer has purposefully engaged in forum activities so it can reasonably expect to be haled into court there." Snell v. Bob Fisher Enterprises, Inc. , 115 F. Supp. 2d 17, 22 (D. Me. 2000).*

Oklahoma was the result of any deliberate effort by Defendant to "serve the forum state's market." *See Fidelity and Cas.,* 766 F.2d at 466.   In fact, the evidence is to the contrary.   The fact that Defendant knew the foamer was to be used here is not sufficient to constitute purposeful availment unless the product's use here was the result of Defendant's own deliberate actions.

The presence of Defendant's  other products  in Oklahoma:

The evidence before the Court establishes that, during the approximately 23 years Defendant has been in business, it estimates that 38 to 40 drive units/gear boxes it manufactured  have been installed in Oklahoma.  Kinser dep., p. 9, lines 14-25; p. 10, lines 1-10.  However, Oklahoma was not a target market for Defendant's products; its drive units/gear boxes were manufactured at the request of customers who purchased from a contractor or original equipment manufacturer, which then shipped the product to the state where it would be installed and utilized.  Kinser dep., p. 12, lines 16-25.  Defendant's records indicate that, of the 38 to 40 drive units/gear boxes which were ultimately used in Oklahoma, approximately 12 were shipped directly to the state by Defendant.  *Id.*, p. 12; p. 10, lines 4-10.

Defendant does not track the sale of its foamers.  Kinser dep., p. 9, lines 18-23.   Defendant sold foamers only to chemical companies or distribution product companies, and does not maintain records reflecting where those foamers were ultimately used.  *Id.,* p. 11, lines 1-7.  Defendant is aware of only one foamer which was ultimately used in Oklahoma, and that is the foamer at issue in this case.  Kinser dep., p. 10, lines 11-18.   Because Defendant does not track the location of the ultimate end users of its foamers, however, it is possible that other foamers have been used here; Defendant does not have control over  its purchasers' later sales of foamers to third parties.  *Id.;* p. 11, lines 1-7.   That Defendant has manufactured and sold drive units/gear boxes which, in small

number, were ultimately installed in Oklahoma is not sufficient to establish the minimum contacts required for the exercise of personal jurisdiction in this case.   Even if the evidence showed that Defendant had purposefully directed those products here, that would not be sufficient because Plaintiff's injury did not arise from or relate to a drive unit/gear box; instead, it was allegedly caused by a defect in a foamer, an entirely different product.   To establish specific personal jurisdiction, Plaintiff must submit evidence to show both that defendant purposefully directed its activities at residents of Oklahoma and that Plaintiff's injury arose out of or related to those activities. *Burger King*, 471 U.S. at 473.     It is not sufficient to show that Defendant engaged in business activities unrelated to Plaintiff's injury.   "That the contacts may have been purposeful only resolves part of our inquiry. [The] cause of action must also arise out of those contacts." *Melea*, 511 F.3d at 1068, *citing Burger King*, 471 U.S. at 472-73.   In a products liability action, where a defendant has had contacts in the state that are unrelated to the cause of action, including sales of other products there, those contacts are insufficient to support the exercise of *in personam* jurisdiction. *Fidelity and Cas. Co.*, 766 F.2d at 447.

Plaintiff has not presented evidence to show that Defendant marketed its foamers in Oklahoma or that it took any action to seek customers for their use in this state.  In fact, as discussed above, the evidence is to the contrary.  Defendant has never had a market plan for foamers, and the purchasers of the foamers, which primarily consisted of chemical companies, were not solicited by Defendant.  Kinser dep., p. 16, lines 11-22; Defendant's response to Requests for Admissions No. 6, submitted as Ex. 1 to Defendant's supplemental brief.   The foamers represented a small portion of Defendant's profits.  Defendant's response to Requests for Admissions No. 16.

Having fully considered the parties' arguments and evidence, and construing the evidence in

favor of Plaintiff, the Court concludes that Plaintiff has failed to make a *prima facie* showing that Defendant has sufficient minimum contacts with Oklahoma to permit this Court to exercise personal jurisdiction over it.   Plaintiff's evidence does not show that Defendant purposefully availed itself of the benefits of doing business in Oklahoma.    Therefore, the Court need not address  whether exercise of jurisdiction would offend traditional notions of fair play and substantial justice.

For the foregoing reasons, the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 11] is GRANTED.  This action is dismissed without prejudice to its refiling in a proper forum.

IT IS SO ORDERED this _3rd____ day of June, 2008.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE